# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

```
-------------------------------------------------------x
GLENN DRAGO, on behalf of himself and      )
all others similarly situated,             )
                                           )
                    Plaintiff.             )
                                           )
                                           )
            v.                             )
                                           )
PETER VUCICEVICH, STEVE SULJA,             )
ANDREW DeVRIES, and SULJA BROTHERS         )
BUILDING SUPPLIES Ltd.,                    )
                                           )
                                           )
                    Defendants.            )
------------------------------------------------------- x
```

**07-600**
**CIV - COOKE**

MAGISTRATE JUDGE
BROWN

## COMPLAINT

Plaintiff, by his attorneys, on behalf of himself and all others similarly situated, for his

Complaint, alleges the following upon personal knowledge as to himself and his acts and as to all

other matters based upon, inter alia, the investigation made by his attorneys, which included a

review of public information about Sulja Brothers. Building Supplies Ltd. ("Sulja Bros." or the

"Company"), published reports, conference calls, documents available on the OTC Bulletin

Board, Company press releases, Internet research, articles in the news media, and information

gathered from an investigation conducted by the Ontario Securities Commission.

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of all purchasers of the common stock of

Sulja Bros. between August 1, 2006 and November 29, 2006, inclusive, (the "Class Period"),

seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Sulja Bros. manufactures and distributes building supplies for construction projects. Throughout the Class Period, defendants issued false positive statements about the Company's growth and expanding business prospects throughout the United States and aboard. Defendants made numerous claims through press releases that the Company had contracts that were in the "final stages of negotiations," "contracts that closed," and "closed on contracts with conditional status." Defendants further stated through press releases and personal interviews, that the Company cultivated large projects in the Middle Eastern market. One of these projects was the alleged building of a Design Depot for the supply of its numerous projects in Dubai. These statements were false and misleading and were designed to pump up Sulja Bros. stock price so that insiders could sell their stock at artificially inflated prices.

3.      Recently, on December 27, 2006, the Ontario Securities Commission filed an enforcement action against the Defendants Petar Vucicevich ("Vucicevich") and Andrew DeVries ("DeVries") for manipulative trading of Sulja Bros. shares that artificially inflated the price of the stock when these defendants traded in secret, Nominee Accounts. (Attached as Exhibit 1). The enforcement action by the Ontario Securities Commission includes a sworn affidavit by Tom Anderson, an Investigator with the Ontario Securities Commission that depicts the extent of the defendants' manipulative practices. (Attached hereto as Exhibit 2). The enforcement action also includes Kore International Management Inc. ("Kore") a company owned and controlled by Vucicevich.

4.      On November 29, 2006, when the truth about Sulja Bros. became known to investors, the stock price for Sulja Bros. dropped substantially causing injury to plaintiff and

2

other shareholders.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. Section 78j(b) and Section 78t(a), and Rule 10b-5, 17 C.F.R. Section 240 10b-5, promulgated thereunder by the SEC.

6.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Many of the acts complained of in this complaint arose in this District.  Sulja Bros. contracted with the Florida investor relations firm of Marquee Asset Management to act as Sulja Bros.' official public relations representatives in Florida.  Marquee Asset Management is located at 2400 East Las Olas Building H 394, Fort Lauderdale, Florida 33301.  Some of the press releases complained of in this complaint were issued by Marquee Asset Management.

7.      In connection with the acts, conduct and other wrongs alleged in this Complaint, the defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails, telephone communications and the facilities of national securities exchanges.

## THE PARTIES

8.      Plaintiff Glenn Drago purchased shares of the common stock of Sulja Bros. during the Class Period and was damaged thereby, as set forth in the attached certification.

9.      Sulja Bros. Building Supplies Ltd. ("Sulja Ontario") is incorporated in Ontario with a registered office in Harrow, Ontario.  Sulja Bros. Building Supplies, Ltd. (Sulja Nevada")

was incorporated in May 2006, in Nevada with a registered office in Las Vegas. Sulja Bros. Ontario and Sulja Bros. Nevada are referred to herein as "Sulja Bros." Defendant Sulja Bros. describes itself as a specialist in construction products and conducts business throughout the United States and abroad. The Company's offices are located at 1710 Erie St. South Harrow, Ontario and 3638 N. Rancho Drive, Suite 6 Las Vegas, Nevada, 89130. Sulja Bros. is quoted in the pink sheets, an over-the-counter quotation system traded on the OTC Bulletin Board, under the ticker symbol "SLJB.PK."

      10.    Defendant Vucicevich was, at all relevant times, the Chief Executive officer and a Director and principal spokesperson for Sulja Bros. Vucicevich is quoted in the Company's September 7, 2006 press release stating "This corporation will be judged simply through our efforts and our successes, and only by these means will the share price be affected." Vucicevich is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Sulja Bros. common stock, by disseminating materially false and misleading statements and/or concealing material adverse facts. Vucicevich is a resident of Ontario. He is also the director and majority shareholder of Kore. Kore is a company incorporated in Ontario with a registered office in Windsor, Ontario. Kore has a business relationship with Sulja Bros. through Vucicevich. Vucicevich left Sulja Bros. in November 2006.

      11.    Defendant Steve Sulja is and was, at all relevant times, the Chief Executive officer and a Director and principal spokesperson for the Company. Steve Sulja is quoted in the Company's August 4, 2006 press release stating "Sulja Bros. is pleased to release financial statements to the investing community. The posted financials are a compilation of Sulja Bros.

and all of its North American and Middle Eastern wholly owned subsidiaries. We had a great year and our Middle East projects are supplying tremendous growth. We look forward to another outstanding year with increased net profits and growth." Steve Sujla is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of the Company common stock, and because he disseminated materially false and misleading statements and/or concealing material adverse facts.

12.    Defendant Andrew DeVries is a resident of Texas. DeVries is an associate of Vucicevich and is also affiliated with Kore discussed below, and Sulja Bros. Between August 2006 and November 2006, DeVries assisted Vucicevich in directing the trading of the Nominee Accounts.

13.    Defendants Vucicevich and Sulja, as the senior officers and spokespersons of Sulja Bros., were the controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act and had the power and influence, and exercised the same, to cause the Company to engage in the unlawful conduct complained of herein.

## FACTUAL ALLEGATIONS

## A. DEFENDANTS' FRAUDULENT SCHEME USING NOMINEE ACCOUNTS

14.    Prior to the beginning of the Class Period, the defendants, and each of them, embarked upon a plan, scheme and a course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and the other Class members, regarding, among other things, the business, state of regulatory compliance and prospects of Sulja Bros.; (ii) artificially inflate and maintain the market price of the Company's common stock; and (iii) cause plaintiff and the other members of the Class to purchase the

Company's common stock at artificially inflated prices. In furtherance of the foregoing unlawful plan, scheme and course of conduct, defendants, among other acts of deception, issued or caused to be issued, during the Class Period, a series of false and misleading public statements, as described herein, which operated as a fraud and deceit upon the market for the Company's common stock, plaintiff, and the other members of the Class.

15.     According to the December 27, 2006 Complaint issued by the staff of the Ontario Securities Commission in its enforcement action against Sulja Bros., Vucicevich, DeVries and Kore (the "Ontario Complaint"), from or about September 2004 to August 2005, Vucicevich set up trading accounts at two Canadian discount brokers using employees of Kore and one or members of the Sulja family as nominees (the "Nominee Accounts").

16.     According to the Ontario Complaint, between August 2006 and November 2006, Vucicevich and DeVries directed trading in the Nominee Accounts as follows: Sulja Bros. shares were received in large quantities into the Nominee Accounts by journal entry from Transfer Online, a transfer agent in Portland, Oregon, and were thereafter sold from the Nominee Accounts. Vucicevich and DeVries instructed the account holders of the Nominee Accounts when to trade, at what price to trade, and how many shares to trade at a given price.

17.     The shares were received into the Nominee Accounts from Sulja Bros. Nevada's treasury either directly or through Kore. The trading constituted a distribution which required in each instance the issuance of a prospectus receipt by the Ontario Securities Commission for the securities of Sulja Bros. Nevada or an exemption.  No such receipt has been issued nor did the individual defendants demonstrate the existence of a proper exemption from the requirement.

18.     Within the Nominee Accounts, the effect of the trading in securities of Sulja Bros.

6

as directed by Vucicevich and DeVries and as facilitated by Sulja Bros. and Kore, was to maintain a certain share price in Sulja Bros. Nevada, resulting in a misleading appearance of trading activity and an artificial price level for the shares of Sulja Bros. Nevada in breach of the U.S. federal securities laws.

19.    The defendants benefitted from this scheme: the proceeds of the trading in securities of Sulja Bros. from the Nominee Accounts as described above were approximately $7.8 million dollars (US).

20.    According to a statement issued by Vucicevich on December 30, 2006, on PennyProPicks.com (http://pennypropicks.com/_wsn/page13.html) website, Vucicevich explained that DeVries was involved in merging Sulja Bros. Nevada with a company called Loftwerks, Inc. Vucicevich also stated "I understand, after speaking to many of the Sulja shareholders, that they are uncomfortable with Mr. DeVries' involvement with [Sulja Bros.]. I also understand that he has been involved with this process from the beginning and that this fact was well known."

21.    Each of the defendants participated directly in the wrongs complained of herein and each defendant is jointly and severally liable or proportionately liable for the damages suffered by plaintiff and other purchasers of Sulja Bros. common stock during the Class Period.

**B.    DEFENDANTS' FALSE AND MISLEADING STATEMENTS**

22.    Throughout the Class Period, defendants made false statements to mislead the market into believing that Sulja Bros.'s continued to make progress in securing new contracts both here and abroad. (These allegations of false statements apply to all defendants except DeVries).

7

23.     Defendants issued false positive statements advising the public that the Company continued to strive to close profitable contracts that would increase the share price of the Company.

24.     Defendants issued false statements concerning potential acquisitions in order to artificially inflate the Company's share price.

25.     In a press release issued on August 2, 2006, Sujla Bros. told the public about a meeting in Germany to finalize a major construction and supply agreement. Defendant Steve Sulja stated "This is exactly why we expanded in the Middle East and obtained a contract with the Liberian Government for lumber. Sulja Brothers' growth rate in the Middle East is astounding. This joint venture with Emaar Properties opens possibilities for more projects in the near future and increases our market share in the Middle East." The Company's stock price closed at 13 cents on August 2, 2006, up from 11 cents on August 1, 2006.

26.     These statements were false or misleading based on a news article dated November 22, 2006. When interviewed by the Windsor Star, defendant Vucicevich declined to answer questions about the company's much-touted overseas operations–including the purchase of land on AL Reem Island in the United Arab Emirates. In addition, the Complaint filed by the Ontario Securities Commission noted that Sulja's supposed contracts in the Middle East were a sham.

27.     In a press release issued on August 11, 2006, Steve Sulja stated: "We are very pleased to inform our shareholders of the current transfer of assets. We are actively negotiating with KPMG International and PricewaterhouseCoopers to handle all future Securities and Exchange Commission filings and reporting." The Company also issued a press release on August 23, 2006 stating that these firms would be conducting an audit of certain financial

8

transactions and that audited financials were "upcoming."

28.    These statements were false and misleading based on the letters dated September 29, 2006 issued by KPMG LLP and PricewaterhouseCoopers to the Ontario Securities Commission advising that Sulja Bros. "had made misrepresentations in recent press releases with respect to its relationship with PWC and KPMG." According to their respective letters "Sulja Bros. was not, nor had it ever been, an audit client of either firm."

29.    On August 21, 2006, Sulja Bros. hired Marquee Asset Management as its investor relations firm, according to Sulja Bros.' press release of that date. According to Florida business records, Marquee Asset Management is headquartered in this district at 2400 East Las Olas Building H 394 Fort Lauderdale, Florida 33301. According to an August 21, 2006 press release by Marquee Asset Management, its employees "recently formed (Marquee Management) at the request of Sulja Bros. and Consultech." Sulja Bros. also told investors that it was "heavily relying on Marquee Asset Management's feedback from [its] shareholders to correct how we do business." Sulja Bros. told investors: "Please feel free to discuss any issues with Marquee Asset Management. It is important to our business model to have open channels of communications with our new owners." According to Sulja Bros.' August 25, 2006 press release, Sulja Bros. "received feedback from Marquee Asset Management's CEO Chad A. Curtis asking for details on the previous press release."

30.    In a press release issued on August 25, 2006 Sulja Bros. CEO Steve Sulja stated: "We have contracts closed, closed with conditional status, and some in the final stages of negotiations. We will release the details of our contracts in the near future. We will include final revenue with estimated net profits for each contract. We want to remain focused on the terms

9

and conditions of each contract to make sure each party is pleased with the result. After the conclusion, we will release information that shareholders can easily verify."

31.     These statements were false or misleading when made, based on the continued delay of information to shareholders concerning the contracts' authenticity. Furthermore, since the August 25th press release there were numerous statements made by both Steve Sulja and Vucicevich for which no plausible reason was given regarding the delayed announcements concerning the contracts mentioned on August 25, 2006. To the contrary, from September 25, 2006 up until November 29, 2006, defendants continued to make excuses for the delay of information concerning the status of these contracts. In addition, Sulja Bros. has never filed any financial statements with any regulatory body.

32.     In a press release issued on September 5, 2006, Sulja Bros. CEO Steve Sulja stated "The cement contract has been finalized, and the contract is officially closed. The contract is for seven million metric tons of cement per year. The cement will be transported to Abu Dhabi, UAE."

33.     These statements were false or misleading based on the investigation conducted by the Ontario Securities Commission and its Complaint which states "the contracts in the Middle East referred to in the press release dated September 5, 2006 do not exist." Furthermore, according to a news article in the Windsor Star dated December 30, 2006, Hazem Hamaidi, general partner of Ramada General Contracting in Abu Dhabi, UAE stated "We never had a contract." The article goes on to say that Hamaidi and his partner Saleh Khateeb stated "they were completely unaware that Sulja Bros. issued a news release September 5th claiming to have closed a major contract (the cement deal) with Ramada."

34. On December 5, 2006, Sulja Bros. issued a press release seeking to "correct" the press release of September 5, 2006. In doing so, Sulja Bros. stated it was "compelled to state in no uncertain terms that the concrete commodities mentioned in that release and the corresponding transactions were indeed cancelled and no contract even if drafted to finality, was consummated."

35. In a press release issued on September 13, 2006, now the "new CEO" Vucicevich stated: "As the new CEO, Sulja Bros. will continue on the same path that Steve Sulja created. We will not reverse split our shares or change the share structure. The company will continue the Middle East growth with the same philosophy of 'Excellence.' Our customers and shareholders are the primary concern. We will strive to close amicable contracts that will increase the size and price per share of the company. I will approach this task with the same conviction as my predecessor."

36. This statement was false or misleading based on the Ontario Securities Commission Statement in the Complaint that Sulja Bros.' Middle Eastern Contracts were non-existent, as alleged above.

37. In an October 10, 2006 news release, Vucicevich stated Sulja Bros. had finalized the SAM Building materials deal.

38. This statement was false and misleading. A search at the land registry office by The Star (Ontario News Agency) found the title to said company was still under the name of its original owner.

## THE TRUTH IS REVEALED

39. On November 29, 2006, Sulja Bros. released a statement responding to several

11

shareholder concerns about the company. In the press release, however, the Company set forth a rambling tirade, stating that it would forward "pertinent information" to its accountants and lawyers." The press release stated in relevant part:

> As previously set forth for public scrutiny, this company is currently forwarding all relevant documents and authorizations for streamlined distribution of pertinent public information to our accountants and attorneys, who will serve as the sole source of information deemed necessary and completely accurate for the public. The Officers and Directors of SLJB want to express their steadfast alliance with the vision and goals of its former CEO and vow to continue in the same light to achieve these objectives in the near future and in the long-run of our operations. Basically, SLJB is aimed still toward new levels of shareholder value and a presence on broader, more prominent exchanges, goals directly relayed from former CEO Petar Vucicevich and taken on as both solid business objectives and as support for the former company leader. SLJB Management also re-stated that the current onslaught of negative press and its deleterious effects on every aspect of our day-to-day business and, we believe, the injurious downturn on our current share-price is nothing more than pointed sensationalism and an unprovoked tirade serving none but the names of those who would set them forth.

40.    After Sulja Bros. issued this press release, Sulja Bros. stock dropped even further from 3 cents to 1 cent. The market became aware for the first time with this press release that Sulja Bros., Steve Sulja and Vucicevich had no legitimate, specific or detailed response to shareholders who had complained to management that:

(a) the information previously released by the Company about its business and contracts was unverifiable; and

(b) the company had failed to provide audit results as promised.

41.    Sulja Bros.' own website (www.suljabro.com) corroborates the shareholders' concerns. According to the website, Vucicevich had promised that Sulja Bros.' financial statements would be posted on its website, but no financial information was ever provided to shareholders.

42.     A message by Sulja Bros. left on its website states:

Please be advised that the financials which were promised on November 15, 2006 will be posted shortly. We have experience a slight unforeseeable delay. This delay will be address by 4am EST and the financials will be posted at that time or shortly after. A new CEO statement will be posted early on November 16, 2006 , explaining the delay and matters concerning the financials. It is our intention to post this statement prior to posting the financials. We sincerely apologize if this has caused any problems to our shareholders; it is clearly not our intention to do so. Thank you all for your patience, understanding, and continued support. Petar Vucicevich.

43.     On January 10, 2007, Sulja Bros. announced in a press release it had undertaken a review of " the issuance and trading of its common stock, as well as the accuracy of its prior disclosures." The Company "cautions investors not to rely upon the press releases and other public statements previously issued by or on behalf of the Company." According to the January 10, 2007 press release: "Investors should not rely on any statements purporting to be by or on behalf of the Company other than those contained in this release or any future releases issued by the Company."

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a Class, consisting of all persons who purchased or otherwise acquired Sulja Bros. common stock between August 1, 2006 and November 29, 2006, inclusive, and who were damaged thereby. Excluded from the Class are defendants, members of the immediate family of Defendants and any subsidiary or affiliate of Sulja Bros. and the directors, officers and employees of Sulja Bros. or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

13

45.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class located throughout the United States.  As of August 22, 2006, there were approximately 800 million shares outstanding.  Throughout the Class Period, Sujla Bros. common stock was actively traded on the OTC Bulletin Board (an open and efficient market) under the symbol "SLJB.PK."  Record owners and other members of the Class may be identified from records maintained by Sulja Bros. and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the other members of the Class as well as all members of the Class were similarly affected by defendants' wrongful conduct in violation of the federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experience in class and securities litigation.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any question s solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

b.     whether defendants participated in and pursued the scheme and common course of conduct complained of herein;

      c.      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Sulja Bros.;

      d.      whether statements made by defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Sulja Bros.;

      e.      whether the market price of Sulja Bros. common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

      f.      the extent to which the members of the Class have sustained damages and the proper measure of damages.

49.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action

## NO STATUTORY SAFE HARBOR

50.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false and misleading statements pleaded in this Complaint. None of the allegedly false and misleading statements pleaded herein was a forward looking statement nor were any statements identified as "forward-looking statements"

when made. To the extent that there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements because at the time, each of those forward-looking statements was false or misleading and/or the forward-looking statement was authorized or approved by an Sulja Bros. executive officer who knew that these statements were false or misleading when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

51.     At all relevant times, the market for Sulja Bros. common stock was an efficient market following reasons, among others:

        a        Sulja Bros. common stock met the requirements for listing, and was listed and actively traded, on the OTC Bulletin Board, a highly efficient market;

        b        Sulja Bros.' common stock was heavily traded during the class period, with average daily trading volumes of between 10,000,000 to 20,000,000 shares.

        c.      As a result, the market for Sulja Bros. securities promptly digested current information with respect to Sulja Bros. from all publicly-available sources and reflected such information in Sulja Bros. Stock price. Under these circumstances, all purchasers of Sulja Bros. common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## SCIENTER ALLEGATIONS

52.     As alleged herein, defendants acted with scienter in that defendants knew that the

public documents and statements, issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Sulja Bros. and its business practices, their control over and/or receipt of Sulja Bros. allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Sulja Bros. were active and culpable participants in the fraudulent scheme alleged herein. Defendants knew and /or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. This case does not involve allegations of false forward-looking statements or projections but instead involves false statements concerning the Company's business, finances and operations. The ongoing fraudulent scheme described in this Complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Defendants Vucicevich and Sulja.

## **LOSS CAUSATION**

53.     Defendants' false statements and stock manipulation through Nominee Accounts artificially inflated the price of Sulja Bros. Stock. When the truth was revealed and investors learned that Sulja Bros. would not deliver on any of its promises made during the Class Period, the price of Sulja Bros. stock collapsed.

17

## FIRST CLAIM

### Against All Defendants for Violations of Section 10(b)
### Of the Exchange Act and Rule 10b-5 (a) & ( c) Promulgated Thereunder

54.     Plaintiff repeats and realleges paragraphs 1 to 24 set forth above as if fully set forth herein.  This Count is asserted against all defendants.

55.     During the Class Period, defendants carried out a plan, scheme and course of conduct that was intended to and did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate the market price of Sulja Bros. stock, and (iii) cause plaintiff and other Class members to purchase Sulja Bros. stock at artificially inflated prices.

56.     In furtherance of this unlawful plan, scheme and course of conduct, defendants employed devices, schemes and artifices to defraud and engaged in acts, practices and a course of business which operated as a fraud and deceit upon the investing public, in connection with the purchase of Sulja Bros. stock, in violation of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder.

57.     It was a part of this scheme and artifice to defraud that the defendants opened the Nominee Accounts and secretly traded in Sulja Bros. stock in those Nominee Accounts, as alleged above.  Defendants profited from this unlawful and secret trading in the amount of $7.8 million.

58.     The defendants acted knowingly or with deliberate recklessness and for the purpose and effect of artificially inflating the price of the Company's stock.

59.     The members of the Class reasonably relied upon the integrity of the market in

18

which the Company's stock traded.

60.   Plaintiff and the other members of the Class were ignorant of the defendants' fraudulent scheme and unlawful course of conduct. Had plaintiff and the other members of the Class known of the defendants' unlawful scheme and unlawful course of conduct, they would not have purchased or otherwise acquired Sulja Bros. stock or if they had, they would not have purchased or otherwise acquired them at the artificially inflated prices they paid for such stock.

61.   Plaintiff and the members of the Class were injured because the risks that materialized were risks of which they were unaware as a result of the defendants' scheme to defraud as alleged herein.

62.   By virtue of the foregoing, defendants violated Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder.

63.   As a direct and proximate result of the defendants' scheme to defraud and their unlawful course of conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Sulja Bros. stock in an amount to be proven at trial.

64.   This Count is brought solely and exclusively under the provisions of Rule 10b-5(a) and (c). Accordingly, plaintiff need not allege or prove that Sulja, or any defendant made any misrepresentations or omissions of material fact for which they may also be liable under Rule 10b-5(b) and/or any other provisions of law.

### SECOND CLAIM

**Against Defendants Sulja Bros., Petar Vucicevich, and Steve Sulja for**
**Violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) Promulgated Thereunder**

65.   Plaintiff repeats and realleges each and every allegation contained above. This

claim is not asserted against defendant DeVries.

66.     Each of the defendants: (a) knew or recklessly disregarded material adverse non-public information about Sulja Bros. financial results and then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representation of and about Sulja Bros.

67.     Plaintiff's loss on his purchase of the common stock of Sulja Bros. was caused by the false and misleading statements of material fact alleged herein.

68.     During the Class Period, defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

69.     Defendants have violated § 10(b) of the Exchange Act Rule 10b-5(b) promulgated thereunder in that during the Class Period they made untrue statements of material facts or omitted facts  necessary in order to make statements made, not misleading.

70.     Plaintiff and Class have suffered damage in that, in reliance on the integrity of the market.  Plaintiff and the Class would not have purchased Sulja Bros. stock had they been aware of defendants' false and misleading statements.

### THIRD CLAIM

### (Violation of Section 20(a) of the Exchange Act Against Defendants Vucicevich and Sulja)

71.     Plaintiff repeats and realleges each and every allegation contained above.

72.     Defendant Vucicevich and Sulja acted as controlling persons of Sulja Bros. within

the meaning of Section 20(a) of the Exchange Act.  By reason of their senior executive and/or Board positions, and having the power and authority to cause Sulja Bros. to engage in the wrongful conduct complained of herein.

73.   By reason of such wrongful conduct, Defendants Vucicevich and Sulja are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these defendants' wrongful conduct, plaintiffs and other members of the Class suffered damages in connection with their purchases of Sulja Bros. stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment as follows:

A.   Determining that this action is a proper class action and certifying plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.   Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.   Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees: and

D.   Such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a trial by jury.

Dated: January 18, 2007.            **VIANALE & VIANALE LLP**

By:   _Kenneth J. Vianale_
Kenneth J. Vianale
Fla. Bar No. 0169668
Julie Prag Vianale
Fla. Bar No. 0184977

21

2499 Glades Road, Suite 112
Boca Raton, Florida 33431
Tel: 561-392-4750
Fax: 561-392-4775

**DAVID R. CHASE, P.A.**
1700 East Las Olas Boulevard
Penthouse 2
Fort Lauderdale, FL 33301
Phone: (954) 920-7779
Fax: (954) 923-5622

*Attorneys for Plaintiff*

OSC: In the Matter of Sulja Bros. Building Supplies, Ltd. (Nevada), Sulja Bros. Building ... Page 1 of 1

Case 0:07-cv-60072-MGC Document 1 Entered on FLSD Docket 01/18/2007 Page 23 of 35


PDF Version

# IN THE MATTER OF THE *SECURITIES ACT*
R.S.O. 1990, c.S.5, AS AMENDED

- and -

## SULJA BROS. BUILDING SUPPLIES, LTD. (NEVADA),
SULJA BROS. BUILDING SUPPLIES LTD.,
KORE INTERNATIONAL MANAGEMENT INC.,
PETER VUCICEVICH AND ANDREW DeVRIES

### STATEMENT OF ALLEGATIONS
OF STAFF OF THE ONTARIO SECURITIES COMMISSION

Staff of the Ontario Securities Commission ("Staff") make the following allegations:

**Parties**

1. Sulja Bros. Building Supplies Ltd. ("Sulja Ontario") is a company incorporated in Ontario in 1987 with a registered office in Harrow, Ontario. Sulja Ontario is in the building supplies business and has been operating in the Windsor area for a number of years.

2. Sulja Bros. Building Supplies, Ltd. (Nevada) ("Sulja Nevada") is a company incorporated in May 2006, in the State of Nevada with a registered officer in Las Vegas, Nevada. Sulja Ontario and Sulja Nevada are collectively referred to in this Statement of Allegations as "Sulja Bros."

3. Peter Vucicevich ("Vucicevich") is a resident of Ontario. Vucicevich is the former Chief Executive Officer of at least one of the Sulja Bros. companies. Vucicevich is also the director and a majority shareholder of Kore International Management Inc. ("Kore").

4. Kore is a company incorporated in Ontario with a registered office in Windsor, Ontario. Kore has a relationship with Sulja Bros. through Vucicevich.

5. Andrew DeVries ("DeVries") is an American resident in Texas. DeVries is an associate of Vucicevich and is also affiliated with both Kore and Sulja Bros.

**Manipulative Trading of Sulja Nevada Shares**

6. Sulja Bros. is quoted on the Pink Sheets, an over-the-counter quotation system in the United States. It is not listed for trading on any exchange or trading system in Canada.

7. From or about September 2004 to August 2005, Vucicevich set up trading accounts at two Canadian discount brokers using employees of Kore and/or members of the Sulja family as nominees (the "Nominee Accounts").

8. Between August 2006 and November 2006, Vucicevich and DeVries directed trading in the Nominee Accounts as follows: Sulja Nevada shares were received in large quantities into the Nominee Accounts

*Exhibit "A"*

by journal entry from Transfer Online, a transfer agent in Portland, Oregon, and were thereafter sold from the Nominee Accounts. Vucicevich and De Vries instructed the account holders of the Nominee Accounts when to trade, at what price to trade, and how many shares to trade at a given price.

9. The shares were received into the Nominee Accounts from Sulja Nevada's treasury either directly or through Kore. In both circumstances, the trading constituted a distribution which requires in each instance the issuance of a prospectus receipt by the Commission for the securities of Sulja Nevada or a proper exemption under Ontario securities law. No such receipt has been issued nor have the Respondents demonstrated the existence of a proper exemption from the requirement, contrary to section 53 of the Act.

10. Within the Nominee Accounts, the effect of the trading in securities of Sulja Nevada as directed by Vucicevich and DeVries and as facilitated by Sulja Bros. and Kore, was to maintain a certain share price in Sulja Nevada, resulting in a misleading appearance of trading activity and an artificial price level for the shares of Sulja Nevada in breach of section 126.1 of the Act.

11. The proceeds of the trading in securities of Sulja Bros. from the Nominee Accounts as described above are approximately $7.8 million (US).

**Misleading Disclosure**

12. Sulja Bros. issued press releases dated August 11, 2006 and August 23, 2006, in which each time it stated that it was negotiating with KPMG LLP ("KPMG") and PriceWaterhouseCoopers ("PWC") to handle all future SEC filings and reporting. The press releases further represented that those firms would be conducting an audit of certain transactions and that the audited financial were "upcoming".

13. Sulja Bros. issued a press release dated September 5, 2006, stating that it has a contract for building materials in the Middle East which will produce annual revenues of $3.5 million.

14. The representations made in the press releases described above are untrue. Neither KPMG nor PWC have or have had any involvement with Sulja Bros. Furthermore, the contracts in the Middle East referred to in the press release dated September 5, 2006 do not exist.

15. Vucicevich and DeVries are responsible for Sulja's improper disclosure and for the misrepresentations made in the press releases.

16. By issuing disclosure that contained statements that were in a material respect misleading or untrue, Sulja Bros., Vucicevich and De Vries are in breach of section 126.2 of the Act.

**Conduct Contrary to Ontario Securities Law and Contrary to the Public Interest**

17. The Respondents have issued false press releases contrary to section 126.2 of the Act that misrepresent the business of Sulja Bros. and its prospects.

18. At the same time, the Respondents have traded or have caused to be traded, large numbers of shares of Sulja Nevada to third parties in a manner which constituted distributions for which no preliminary prospectus or prospectus were filed nor a receipt issued by the Director, contrary to section 53 of the Act.

19. The trading directed by Vucicevich and De Vries and facilitated by Sulja Bros. and Kore have created a misleading appearance of trading activity and an artificial price for the shares of Sulja Nevada contrary to section 126.1 of the Act.

20. The Respondents' conduct was contrary to the public interest and harmful to the integrity of the

Ontario capital markets.

DATED at Toronto this 27 th day of December, 2006.



IN THE MATTER OF THE *SECURITIES ACT*
R.S.O. 1990, c.S.5, AS AMENDED

- and -

**SULJA BROS. BUILDING SUPPLIES, LTD. (NEVADA),
SULJA BROS. BUILDING SUPPLIES LTD.,
KORE INTERNATIONAL MANAGEMENT INC.,
PETAR VUCICEVICH AND ANDREW DeVRIES**

**AFFIDAVIT OF TOM ANDERSON
SWORN DECEMBER 29, 2006**

I, TOM ANDERSON, an Investigator with Staff of the Ontario Securities Commission, in the City of Toronto, in the Province of Ontario, MAKE OATH AND SAY:

**Overview**

1.     This matter involves what appears to be an illegal distribution of securities in Ontario of an issuer in the United States, Sulja Bros. Building Supplies, Ltd. (Nevada) ("Sulja Nevada"), the price of which appears to have been artificially inflated through trading in nominee accounts in Ontario on the instruction of Petar Vucicevich ("Vucicevich") and facilitated by Andrew DeVries ("DeVries").

2.     This matter also involves what appears to be misleading disclosure in Ontario by Sulja Nevada and/or a related Ontario corporation, Sulja Bros. Building Supplies Ltd ("Sulja Ontario").  Sulja Nevada and Sulja Ontario are collectively referred to in my affidavit as "Sulja Bros."

Exhibit "B"

1

**The Parties**

3.      Sulja Nevada was incorporated pursuant to the laws of the State of Nevada in May 2006.  Its registered office is in Las Vegas, Nevada.   Attached hereto as Exhibit "1" is a copy of the corporation details for Sulja Nevada from the Nevada Secretary of State website (www.sos.state.nv.us).

4.      Sulja Nevada is quoted on the Pink Sheets, an over-the-counter quotation system in the United States.  Attached hereto as Exhibit "2" are screen shots for Sulja Nevada from the Pink Sheets website (www.pinksheets.com) on December 14, 2006.

5.      Based on inquiries that I have made, it appears that Sulja Nevada is not listed for trading on any exchange or trading system in Canada nor has the Commission issued a prospectus receipt in Ontario for the securities of Sulja Nevada.

6.      Sulja Ontario is a company incorporated in Ontario in 1987.  Its registered head office is in Harrow, Ontario.  Attached hereto as Exhibit "3" is a copy of the Corporation Profile Report for Sulja Ontario from the Ministry of Consumer and Business Services dated December 8, 2006.

7.      Based on a print-out of its website (www.suljabros.com), Sulja Bros. appears to be in the building supplies business and appears to operate in the Windsor area.  Attached hereto as Exhibit "4" is a copy of a print-out from the Sulja Bros. website  on December 28, 2006 which provides information about Sulja Bros. and its contact information.

8.      I understand that Vucicevich is a resident of Ontario.  Based on certain press releases by Sulja Bros., it appears that Vucicevich was the CEO of Sulja Bros. from September 7, 2006 to November 21, 2006, when he resigned.  Steve Sulja, who was the CEO prior to Vucicevich's appointment in September 2006, was reinstated when Vucicevich resigned in November 2006. Attached respectively hereto as Exhibits "5" and "6" are copies of press releases from Sulja Bros. dated September 7, 2006 and November 21, 2006.

9.      Vucicevich is also the director and, as described below, appears to be the operating mind of Kore International Management Inc. ("Kore") in Canada, a company incorporated pursuant to the laws of Ontario in May 2005.   Kore's registered office is located in Windsor, Ontario.   It appears that Kore has a relationship with Sulja Bros. through Vucicevich (as described below).   Attached hereto as Exhibit "7" is a copy of the Corporation Profile Report for Kore from the Ministry of Consumer and Business Services dated December 8, 2006.

10.      I understand that DeVries is an American resident who lives in Texas.  He is an associate of Vucicevich and is affiliated with Kore in the United States and Sulja Bros. (as described below).

**Misleading Disclosure**

11.      By letters dated September 29, 2006, each of PricewaterhouseCoopers ("PWC") and KPMG LLP ("KPMG") advised Staff of the Commission that Sulja Bros. had made misrepresentations in recent press releases with respect to its relationship with PWC and KPMG.  Also enclosed with their correspondence to Staff was documentation in support of their objection to the misrepresentations made by Sulja Bros.  Attached respectively hereto as Exhibits "8" and "9" are copies of the correspondence package received from PWC and KPMG dated September 29, 2006.

12.      In their letters to Staff, PWC and KPMG advised that, in a press release dated August 11, 2006, Sulja Bros. had made untrue statements that it was negotiating with both KPMG and PWC to handle all future Securities and Exchange filings and reportings. Attached hereto as Exhibit "10" is a copy of the press release from Sulja Bros. dated August 11, 2006.

13.      In a further press release dated August 23, 2006, Sulja Bros. made statements that PWC and KPMG were performing an audit for Sulja Bros. which would be completed in the near future.  In their letters to Staff, PWC and KPMG advised that Sulja Bros. was not, nor had it ever been, an audit client of either firm.  Attached hereto as Exhibit "11" is a copy of the press release from Sulja Bros. dated August 23, 2006.

14.     In their letters to Staff, PWC and KPMG enclosed copies of correspondence to Vucicevich as the CEO of Sulja Bros. and to Marquee Asset Management LLC ("Marquee"), the investor relations firm for Sulja Bros., demanding that Sulja Bros. cease and desist from making any further reference to PWC and KPMG and that Sulja Bros. correct the misrepresentations made in respect of its relationship with them.

15.     I have reviewed subsequent press releases issued by Sulja Bros. and have not found any statements by Sulja Bros. retracting the representations concerning PWC and KPMG.

**Sulja Bros. Trading**

16.     On November 6, 2006, Corporal Gordon Aristotle and Senior Investigator Darrell Nay, surveillance officers with the OSC/RCMP/IDA Joint Securities Intelligence Unit ("JSIU"), attended at the Sulja Bros. lumber yard in Harrow, Ontario. At that time, the officers met with and recorded a voluntary statement from Vucicevich and DeVries regarding Sulja Bros. Attached hereto as Exhibit "12" is a copy of a transcription of the interview with Vucicevich and DeVries on November 6, 2006.

17.     During the interview, Vucicevich advised that Sulja Nevada began trading on the Pink Sheets as a result of a reverse merger with Loftwerks, a shell company that Vucicevich claimed owed a significant debt to Sulja Bros. and Vucicevich (pp. 18-19, 52-53 and 56 of Exhibit 12). Based on Vucicevich's statements to JSIU, it appears that, in settlement of the debt, Sulja Nevada merged with Loftwerks (pp. 19 and 52-52 of Exhibit 12)

18.     It appears that the merger occurred in or around July 2006 and that, following the merger, Loftwerks was renamed Sulja Nevada and has continued to trade as an over-the-counter security as quoted on the Pink Sheets (Exhibit 1, and p.7 of Exhibit 2).

19.     At the time of the merger, Vucicevich advised that "we issued 300 million shares" of Sulja Nevada in addition to the existing float of 500 million shares that had been issued by the company as Loftwerks, for a total of 800 million shares outstanding (pp.18 and 35 of Exhibit 12).

_14_

20.    Vucicevich further advised that the shares were issued by Sulja Nevada to "raise capital for Sulja Brothers so that Sulja Brothers can expand [...]" (pp. 19-20 and 22 of Exhibit 12).

21.    Vucicevich went on to explain that Sulja Bros. entered into share selling arrangements, which he described as "trust" arrangements, with employees of Kore, Pranab Shah and Tracey Banumas, and members of the Sulja family, Samuel Sulja and John Sulja (collectively referred to as the "Nominees"), whereby they were paid to trade newly issued shares of Sulja Nevada on behalf of the company (pp. 26-31 of Exhibit 12).

22.    From the interview, it appears that the Nominees opened brokerage accounts at TD Waterhouse and RBC Action Direct (the "Nominee Accounts") for the purpose of trading the securities of Sulja Nevada and that shares of Sulja Nevada were received by journal entry into the Nominee Accounts through the company's transfer agent (pp. 26-31 and 34 of Exhibit 12).

23.    Based on Vucicevich's statements to JSIU, it appears that the shares were subsequently sold out of the Nominee Accounts at his direction. It further appears that the proceeds of the trading went back to Sulja Bros., either directly and/or through Kore, to pay debts owed by Sulja Bros., including to the Sulja family for their interest in the company, and to expand and operate the business (pp. 6, 19-22 and 27 of Exhibit 12). Vucicevich explained that the Nominees had entered into trust agreements which set out the terms of this share selling arrangement pp. 26 – 31 of Exhibit 12).

24.    Based on further statements made by Vucicevich during the interview, it appears that Vucicevich directed the trading by telling the Nominees when to trade and how many shares to trade at a given price (pp. 27-30 of Exhibit 12).    Vucicevich stated in the interview that he directs the trading to keep the price at $.012 (pp. 20, 40 and 67 of Exhibit 12). He also advised that they have raised $7.8 million by trading approximately 150 million shares in this manner (pp. 20-21 and 61 of Exhibit 12).

15

25.     Vucicevich further explained that the Canadian and U.S. operations of Kore are involved with Sulja Bros. to oversee the expansion of Sulja Bros. and that Kore U.S. "[…]at this point, they're controlling 280 million shares" (pp. 13 and 27 of Exhibit 12).

26.     Vucicevich advised that he is the directing mind of Kore's operations in Canada and that DeVries is the operating mind of Kore in the U.S. (p. 28 of Exhibit 12). Vucicevich advised that DeVries is responsible for the share structure of Sulja Bros. and "is the one that is authorized to distribute the shares" (p. 41 of Exhibit 12).

27.     Vucicevich indicated in the interview that he had provided funding to Sulja Bros. "long before Sulja went public" (p. 12 of Exhibit 12) and that in accordance with the "agreement" that he signed with the Sulja family "in the beginning", Kore will be remunerated for its involvement in expanding Sulja Bros. (p. 72 of Exhibit 12).

**Account Statements for the Nominee Accounts**

28.     Following the JSUI interview with Vucicevich and DeVries, I obtained the following account opening documentation and account statements for the Nominee Accounts during the period between January 2006 and November 2006:

>   (a)  RBC Action Direct Inc., Account #680-4193-1-1 in the name of Pranab Pratap Shah (the "Shah Account"), attached hereto as Exhibit "13";
>
>   (b)  TD Waterhouse, Account #80X035 in the name Tracey Banumas (the "Banumas Account"), attached hereto as Exhibit "14";
>
>   (c)  TD Waterhouse Account #59B400 in the name of John Sulja (the "John Sulja Account"), attached hereto as Exhibit "15";
>
>   (d)  TD Waterhouse Account #73W846 in the name of Samuel Sulja (the "Sam Sulja Account"), attached hereto as Exhibit "16"; and
>
>   (e)  TD Waterhouse Account in the names of Samuel and Vladko Sulja (the "Joint Sulja Account", attached hereto as Exhibit "17".

29.     Based on a review of the account statements for all of the Nominee Accounts, there appears to be high levels of trading in both Loftwerks (from February 2006 to July 2006) and Sulja Nevada (from July 2006 to November 2006).

30.     I require more time to interview others involved with Sulja Bros., Kore, and possibly other entities in order to understand to understand the nature of the relationships between the Respondents and the nature and scope of the trading in Sulja Bros. securities. I estimate I will need at least six months to do that.

SWORN BEFORE ME at the City of Toronto,     )
In the Province of Ontario, this 29th day of     )
December, 2006.     )
     )
     )     **TOM ANDERSON**
     )
     )

_____
A Commissioner for taking Affidavits
**Pamela Foy**

/7

JAN-04-2007 15:22 From:

To:51367790258                    P.2/3

Vianale & Vianale LLP
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Tel : 561-392-4750/Fax: 561-392-4775

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

### Re: Sulja Brothers Building Supplies, Ltd. – Ticker SLJB

I, Glenn Drago, hereby declare:

1.      I have reviewed a complaint and authorized its filing. I retain the law firms of
Vianale & Vianale LLP and David R Chase, P.A., and such co-counsel they deem appropriate to
associate with to pursue such action on a contingent fee basis.

2.      I did not purchase the security that is the subject of this action at the direction of
counsel or in order to participate in this private action or any other litigation under the federal
securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including
providing testimony at deposition and trial, if necessary.

4.      I have made no transaction(s) during the Class Period in the debt or equity
securities that are the subject of this action except those set forth below: (use a separate sheet if
necessary)

| Date | Transaction Type (Buy or Sell) | # of Shares | Price Per Share |
|------|-------------------------------|-------------|-----------------|
|      | SEE ATTACHED                  |             |                 |

5.      During the three years prior to the date of this Certificate, I have sought to serve
or served as a representative party for a class in the following actions filed under the federal
securities laws:

6.      I will not accept any payment for serving as a representative party on behalf of the
class beyond a pro rata share of any recovery, except such reasonable costs and expenses
(including lost wages) directly relating to the representation of the class as ordered or approved
by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this
7th day of JAN , 2007.

                                        Signed: _____
                                                    1/4/07

| Date | Trans Type (Buy/Sell) | # of Shares | # of Shares | Price/Share | Purchase Amount | Sale Amount |
|------|------|------|------|------|------|------|
| 11/29/2006 | Sell | | 50,000 | 0.022 | | $1,087.46 |
| 11/24/2006 | Buy | 20,000 | | 0.029 | $589.90 | |
| 11/24/2006 | Buy | 30,000 | | 0.031 | $941.65 | |
| 11/24/2006 | Buy | 100 | | 0.024 | $9.41 | |
| 11/20/2006 | Sell | | 200,000 | 0.0125 | | $2,487.42 |
| 11/20/2006 | Sell | | 12,000 | 0.012 | | $143.27 |
| 11/20/2006 | Sell | | 325,399 | 0.012 | | $3,885.14 |
| 11/20/2006 | Sell | | 119,465 | 0.012 | | $1,419.36 |
| 11/20/2006 | Sell | | 100,000 | 0.012 | | $1,193.96 |
| 11/20/2006 | Sell | | 20,913 | 0.0125 | | $260.10 |
| 11/15/2006 | Buy | 4,000 | | 0.096 | $392.92 | |
| 11/15/2006 | Buy | 26,000 | | 0.1 | $2,620.00 | |
| 11/15/2006 | Buy | 10,000 | | 0.094 | $951.70 | |
| 11/15/2006 | Buy | 30,000 | | 0.11 | $3,323.50 | |
| 11/15/2006 | Buy | 24,000 | | 0.105 | $2,539.60 | |
| 11/15/2006 | Buy | 33,777 | | 0.096 | $3,265.80 | |
| 11/14/2006 | Buy | 30,000 | | 0.1 | $3,022.00 | |
| 11/13/2006 | Buy | 20,000 | | 0.12 | $2,419.00 | |
| 11/8/2006 | Buy | 35,000 | | 0.111 | $3,911.43 | |
| 11/8/2006 | Buy | 35,000 | | 0.12 | $4,228.00 | |
| 10/20/2006 | Sell | | 5,000 | 0.139 | | $691.50 |
| 10/20/2006 | Sell | | 6,700 | 0.139 | | $926.61 |
| 10/20/2006 | Sell | | 700 | 0.139 | | $96.80 |
| 10/20/2006 | Sell | | 5,700 | 0.139 | | $781.31 |
| 10/20/2006 | Sell | | 7,900 | 0.139 | | $1,092.57 |
| 10/20/2006 | Sell | | 15,000 | 0.139 | | $2,074.50 |
| 10/17/2006 | Buy | 20,000 | | 0.145 | $2,921.50 | |
| 10/13/2006 | Buy | 35,000 | | 0.115 | $4,052.13 | |
| 9/25/2006 | Buy | 30,000 | | 0.11 | $3,323.50 | |
| 9/25/2006 | Buy | 40,000 | | 0.11 | $4,429.00 | |
| 9/15/2006 | Sell | | 5,997 | 0.135 | | $805.52 |
| 9/15/2006 | Sell | | 10,360 | 0.135 | | $1,384.56 |
| 9/8/2006 | Buy | 30,000 | | 0.074 | $2,238.10 | |
| 9/6/2006 | Buy | 30,000 | | 0.087 | $2,630.05 | |
| 8/24/2006 | Buy | 80,000 | | 0.081 | $6,519.40 | |
| 8/24/2006 | Buy | 21,000 | | 0.08 | $1,695.40 | |
| 8/15/2006 | Buy | 30,000 | | 0.08 | $2,419.00 | |
| 8/15/2006 | Buy | 30,000 | | 0.092 | $2,780.80 | |
| 8/10/2006 | Buy | 30,000 | | 0.07 | $2,117.50 | |
| 8/9/2006 | Buy | 20,000 | | 0.08 | $1,615.00 | |
| 8/6/2006 | Buy | 20,000 | | 0.105 | $2,117.50 | |
| 8/7/2006 | Buy | 30,000 | | 0.089 | $2,690.35 | |
| 8/4/2006 | Buy | 25,000 | | 0.115 | $2,896.38 | |
| 8/4/2006 | Buy | 30,000 | | 0.13 | $3,926.50 | |
| 8/3/2006 | Buy | 6,357 | | 0.115 | $741.72 | |
| 8/2/2006 | Buy | 20,000 | | 0.098 | $1,976.80 | |
| 8/1/2006 | Buy | 20,000 | | 0.09 | $1,816.00 | |
| 7/31/2006 | Buy | 20,000 | | 0.1 | $2,017.00 | |
| 7/31/2006 | Buy | 20,000 | | 0.13 | $2,620.00 | |
| Totals | | 885,234 | 885,134 | | $85,758.54 | $18,330.08 |
| 11/24/2006 | Open | -100 | | | ($9.41) | |
| Realized Totals | | 885,134 | 885,134 | | $85,749.13 | $18,330.08 |
| Realized Loss | | | | | | ($67,419.05) |
| Loss with Open Position Priced at Last Sale ($0.022) | | | | | | ($67,426.26) |

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

07-600

CV-COOKE

MAGISTRATE JUDGE
BROWN

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

GLENN DRAGO, on behalf of himself and all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff  **Hamilton, Ohio**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

VIANALE & VIANALE LLP
2499 Glades Road Suite 112
Boca Raton, FL 33431

## DEFENDANTS

PETER VUCICEVICH, STEVE SULJA, ANDREW DeVRIES, and SULJA BROTHERS BUILDING SUPPLIES Ltd.

County of Residence of First Listed Defendant  **Ontario, Canada**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

0: 07cv60072 MC/STB

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government  Plaintiff
☑ 3  Federal Question  (U.S. Government Not a Party)
☐ 2  U.S. Government  Defendant
☐ 4  Diversity  (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                       and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☑ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☑ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Re-filed- (see VI below)
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO       b) Related Cases ☐ YES ☐ NO
JUDGE                                            DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

15 U.S.C. §:78j(b)

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
January 18, 2007

FOR OFFICE USE ONLY
AMOUNT 350 00       RECEIPT # 539211       IFP